IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRIAN W. JUSTICE,                          §
                                           §
              Plaintiff,                    §
                                           §
v.                                         §
                                           §
WELLS FARGO BANK, N.A., AS                  §
TRUSTEE FOR THE REGISTERED                  §    CIVIL ACTION NO. H-14-3341
HOLDERS OF BEAR STEARNS ASSET               §
BACKED SECURITIES, I, LLC,                  §
ASSET-BACKED CERTIFICATES,                  §
SERIES 2007-AC2 and SELECT                  §
PORTFOLIO SERVICING, INC.,                  §
                                           §
              Defendants.                   §

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian W. Justice ("Plaintiff") brought this suit to quiet title against defendants Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Bear Stearns Asset Backed Securities, I, LLC, Asset-Backed Certificates, Series 2007-AC2 ("Wells Fargo") and Select Portfolio Servicing, Inc. ("SPS") (collectively, "Defendants").[1]  Pending before the court are Defendants' Motion for Summary Judgment (Docket Entry No. 14) and Plaintiff Brian W. Justice's Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment") (Docket Entry No. 15).  For the reasons stated below, Defendants' Motion for Summary Judgment will be granted, Plaintiff's Motion for Summary Judgment will be denied, and this action will be dismissed with prejudice.

---

[1]See Plaintiff's Original Complaint ("Original Complaint"), Docket Entry No. 1.

## I.  Background

Plaintiff executed a note and a security instrument (together, the "Loan") on December 1, 2006, in favor of Maverick Residential Mortgage, Inc. ("Maverick").[2]  Maverick took a security interest in Plaintiff's homestead in exchange for the home equity Loan.[3]  In February of 2007 Maverick transferred servicing of the Loan to EMC Mortgage Corporation ("EMC").[4]  Defendant SPS currently services the Loan.[5]  Defendant Wells Fargo has held the Loan as trustee since September of 2008.[6]

---

[2]See Texas Home Equity Note, Exhibit A to Defendants' Motion for Summary Judgment, Docket Entry No. 14-1; Texas Home Equity Security Instrument, Exhibit B to Defendants' Motion for Summary Judgment, Docket Entry No. 14-2.

[3]See Original Complaint, Docket Entry No. 1, p. 3 ¶ 7; Defendants' Original Answer, Docket Entry No. 7, p. 3 ¶ 8.

[4]See December 21, 2006, Letter from EMC Mortgage Corporation to Brian W. Justice, Exhibit I to Defendants' Motion for Summary Judgment, Docket Entry No. 14-10.

[5]See Defendants' Motion for Summary Judgment, Docket Entry No. 14, p. 8.  Defendant cites to Exhibit I to Defendants' Motion for Summary Judgment, Docket Entry No. 14-10, as evidence of this transfer on August 1, 2013.  Exhibit I is the letter noticing the 2006 transfer from Maverick to EMC. The summary judgment record includes evidence that SPS was servicing the loan by late 2013. See Declaration of Melissa Smith, Exhibit C to Defendants' Motion for Summary Judgment, Docket Entry No. 14-3, p. 4 ¶ 11; Demand Letter—Notice of Default, Exhibit G to Defendants' Motion for Summary Judgment, Docket Entry No. 14-8, p. 4.

[6]Assignment of Note and Deed of Trust, Exhibit H to Defendants' Motion for Summary Judgment, Docket Entry No. 14-9. Numerous entities were involved in the origination and servicing of the Loan at issue in this case.  When their identities are not material to Plaintiff's claim that the statute of limitations for Defendants' foreclosure sale has expired, the court refers to them collectively as Defendants, along with the named defendants in this case.

Plaintiff defaulted on the Loan by June of 2008.[7]   On December 16, 2008, Defendants sent Plaintiff a notice of default and intent to accelerate.[8]   Plaintiff did not cure the default, and Defendants then sent him a notice of acceleration on March 12, 2009 (the "2009 Acceleration").[9]   On June 3, 2009, Defendants filed a Texas Rule of Civil Procedure 736 Application for an expedited order allowing foreclosure (the "2009 Rule 736 Application").[10] Thereafter, Plaintiff signed and returned a repayment agreement (the "Repayment Agreement") to Defendants on September 23, 2009.[11] Plaintiff made, and Defendants accepted, two payments after Plaintiff signed and returned the Repayment Agreement:   one on November 6, 2009, and one on December 7, 2009.[12]

---

[7]See Acceleration Warning (Notice of Intent to Foreclose), Exhibit F to Defendants' Motion for Summary Judgment, Docket Entry No. 14-7, p. 2 ¶ 1.

[8]See December 16, 2008, Notice of Default, Exhibit 1 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-1, p. 2.

[9]See Notice of Acceleration of Loan Maturity, Exhibit 2 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-1, p. 3.

[10]See Home Equity Foreclosure Application, Exhibit 10 to Plaintiff's Motion for Summary Judgment, Docket Entry 15-1, pp. 42-47. Because the Property is Plaintiff's homestead, the lien can only be foreclosed on by court order. Tex. Const. art. XVI, § 50(a)(6)(D); In re Erickson, 566 F. App'x 281, 284 (5th Cir. 2014).

[11]See Repayment Agreement, Exhibit K to Defendants' Motion for Summary Judgment, Docket Entry No. 14-12, pp. 4-8.

[12]See Loan Service Records, Exhibit E to Defendants' Motion for Summary Judgment, Docket Entry No. 14-6, pp. 19, 20. See also Supplemental Declaration Under Penalty of Perjury of Brian W.
(continued...)

Defendants sent another acceleration notice to Plaintiff on August 26, 2010 (the "2010 Notice of Acceleration").[13]  Defendants subsequently filed another Rule 736 application on September 22, 2010 (the "2010 Rule 736 Application").[14]  Plaintiff sued Defendants on October 27, 2011 (the "2011 Lawsuit"), alleging various causes of action related to the Loan.[15]  The court dismissed Plaintiff's 2011 Lawsuit on December 10, 2012, with prejudice as to some claims and without prejudice as to others, after Plaintiff filed a motion to dismiss.[16]

In April of 2012 Plaintiff signed a Request for Mortgage Assistance.[17]  No further action on this request is provided in the

_____

[12](...continued)
Justice ("Plaintiff's Supplemental Declaration"), Exhibit to Plaintiff Brian W. Justice's Summary Judgment Reply ("Plaintiff's Summary Judgment Reply"), Docket Entry No. 19-1, pp. 1-2.

[13]See Notice of Acceleration of Texas Non-Recourse Home Equity Loan, Exhibit D to Defendants' Motion for Summary Judgment ("2010 Notice of Acceleration"), Docket Entry No. 14-4.  As discussed infra at Part II.B.2(a)ii, Plaintiff challenges the validity of this letter and argues that Defendants have not established that Plaintiff received the letter.

[14]See Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure, Exhibit L to Defendants' Motion for Summary Judgment, Docket Entry No. 14-13.

[15]See Plaintiffs' Original Petition in the District Court of Montgomery County, Texas, Ninth Judicial District, Exhibit M to Defendants' Motion for Summary Judgment, Docket Entry No. 14-14.

[16]See Order of Dismissal, Exhibit 16 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-2, p. 19.

[17]See Request for Mortgage Assistance, Exhibit C.9 to Defendants' Motion for Summary Judgment, Docket Entry No. 14-3,
(continued...)

summary judgment record although Plaintiff had apparently previously requested a mortgage modification some time in 2010.[18] Despite these communications Plaintiff remained in default, and Defendants sent Plaintiff default notices on March 19, 2013,[19] and October 1, 2013.[20] Defendants sent a notice of acceleration on September 15, 2014 (the "2014 Acceleration").[21] Following the 2014 Acceleration, Defendants filed a third Rule 736 application on

---

[17](...continued)
pp. 73–78. Plaintiff includes a smaller portion of this document in his summary judgment evidence. <u>See</u> Request for Mortgage Assistance, Exhibit 14 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-2, pp. 13–15.

[18]Plaintiff also provides an earlier letter from EMC to Plaintiff dated May 3, 2010. <u>See</u> Response to Your Request For A Loan Modification, Exhibit 15 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-2, pp. 16–18. This letter and the Request for Mortgage Assistance from 2012 also contain disclaimers of abandonment. However, according to Plaintiff, "[Plaintiff] never accepted these proposals or made payments under them." Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, p. 3 ¶ 4(b). As evidence that Plaintiff did not accept or make payments, Plaintiff attaches a letter to Justice from EMC dated January 8, 2010. <u>See</u> Letter Reminder - Your Trial Payment Has Not Been Received, Exhibit 17 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-2, p. 20.

[19]<u>See</u> Acceleration Warning (Notice of Intent to Foreclose), Exhibit F to Defendants' Motion for Summary Judgment, Docket Entry No. 14-7.

[20]<u>See</u> Demand Letter—Notice of Default, Exhibit G to Defendants' Motion for Summary Judgment, Docket Entry No. 14-8; Exhibit 4 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-1, p. 8.

[21]<u>See</u> Notice of Maturity/Acceleration of Texas Non-Recourse Loan ("2014 Notice of Acceleration"), Exhibit 5 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-1, p. 12.

October 15, 2014 (the "2014 Rule 736 Application").[22]   Plaintiff
filed this suit to quiet title on November 20, 2014.[23]

## II.   Motions for Summary Judgment

### A.   Standard of Review

Summary judgment is appropriate if the movant establishes that
there is no genuine dispute about any material fact and the movant
is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).
Disputes about material facts are genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."   Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510
(1986).   The moving party is entitled to judgment as a matter of
law if "the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has
the burden of proof."   Celotex Corp. v. Catrett, 106 S. Ct. 2548,
2552 (1986).

A party moving for summary judgment "must 'demonstrate the
absence of a genuine issue of material fact,' but need not negate
the elements of the nonmovant's case."   Little v. Liquid Air Corp.,

---

[22]See Application for an Expedited Order Under Rule 736 on a
Home Equity or Home Equity Line of Credit Loan, Exhibit 12 to
Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-2,
pp. 1-7.

[23]See Original Complaint, Docket Entry No. 1.   Note that under
a 2012 rule change if the respondent files an independent suit
challenging the foreclosure application, the Rule 736 Application
is stayed rather than abated.   See Murphy v. HSBC Bank USA, No. H-
12-3278, 2015 WL 1392789, at *2 n.5 (S.D. Tex. March 25, 2015).

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting
Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet
this initial burden, the motion must be denied, regardless of the
nonmovant's response."  Id.  If, however, the moving party meets
this burden, "the nonmovant must go beyond the pleadings" and
produce evidence of specific facts demonstrating there is a genuine
issue for trial.  Id. (citing Celotex, 106 S. Ct. at 2553-54).  The
nonmovant "must do more than simply show that there is some
metaphysical doubt as to the material facts."  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

     "In order to avoid summary judgment, the nonmovant must
identify specific facts within the record that demonstrate the
existence of a genuine issue of material fact."  CQ, Inc. v. TXU
Min. Co., L.P., 565 F.3d 268, 273 (5th Cir. 2009).  "The party must
also articulate the precise manner in which the submitted or
identified evidence supports his or her claim."  Id.  (internal
quotation marks and citation omitted).  "When evidence exists in
the summary judgment record but the nonmovant fails even to refer
to it in the response to the motion for summary judgment, that
evidence is not properly before the district court."  Id.  (same).

     In reviewing the evidence "the court must draw all reasonable
inferences in favor of the nonmoving party, and it may not make
credibility determinations or weigh the evidence."  Reeves v.
Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).  The
court resolves factual controversies in favor of the nonmovant,

-7-

"but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## B.   Analysis

Plaintiff's suit to quiet title relies on his allegation that Defendants failed to foreclose on his property within the time limit required by the Texas Civil Practices and Remedies Code, rendering the lien on his property invalid or unenforceable.[24] Defendants respond that they abandoned earlier accelerations of the Loan, so the statute of limitations has not run.[25] Because the summary judgment evidence establishes that the Repayment Agreement was not effective and Defendants abandoned the accelerations, the

---

[24]Plaintiff's First Amended Complaint added a request for declaratory judgment that limitations ran on Defendants' right to foreclose on March 12, 2013 . . . result[ing] in voiding of the lien." Docket Entry No. 12, p. 5 ¶ 24. Plaintiff requests this relief "[i]n addition or in the alternative to an action to quiet title." Id. "Both Texas and federal law require the existence of a justiciable case or controversy in order to grant declaratory relief." Val-Com Acquisitions Trust v. CitiMortgage, Inc., 421 F. App'x 398, 400 (5th Cir. 2011) (citing Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995)); see also Conrad v. SIB Mortg. Corp., No. 4:14-CV-915-A, 2015 WL 1026159, at *7 (N.D. Tex. March 6, 2015) ("A declaratory judgment action requires the parties to litigate some underlying claim or cause of action."); Elekes v. Wells Fargo Bank, N.A., No. 5:13-CV-89, 2014 WL 2700686, at *5 (S.D. Tex. June 11, 2014) ("Declaratory judgment is merely a form of relief that the Court may grant; it is not a substantive cause of action."). Because Plaintiff's quiet title claim will be dismissed, his request for declaratory relief has no merit.

[25]See Defendants' Motion for Summary Judgment, Docket Entry No. 14, pp. 5-6.

statute of limitations has not expired, and Defendants are entitled to summary judgment.

1.   <u>The 2009 Repayment Agreement never took effect.</u>

The Repayment Agreement that Plaintiff signed and returned to Defendants in 2009 contains language that expressly disclaims abandonment of acceleration.[26]   Plaintiff argues that such language should be given conclusive weight.[27]   Defendants respond that the disclaimer language is not controlling because the Repayment Agreement did not take effect.   Defendants argue that Plaintiff's payments were untimely and too little for the Repayment Agreement to take effect under its own terms.[28]   Defendants also argue that the statute of frauds bars enforcement of the Repayment Agreement, which Defendants did not sign, and also prohibits any purported oral modifications.[29]

(a)   The Repayment Agreement's Terms

Plaintiff and Defendants rely on the Repayment Agreement's terms to support their respective motions for summary judgment.

----

[26]Repayment Agreement, Exhibit 13 to Plaintiff's Motion for Summary Judgment, Docket Entry No. 15-2, p. 9; p. 12 ¶ 10.

[27]<u>See</u> Plaintiff Brian W. Justice's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Response to Defendants' Motion for Summary Judgment"), Docket Entry No. 17, p. 2 ¶ 1; p. 4.

[28]<u>See</u> Defendants' Motion for Summary Judgment, Docket Entry No. 14, p. 9; Defendants' Surreply to Plaintiff Brian W. Justice's Summary Judgment Reply ("Defendants' Surreply"), Docket Entry No. 23, p. 2.

[29]<u>See</u> Defendants' Surreply, Docket Entry No. 23, pp. 2-3.

Defendants' primary argument depends on language in the Repayment
Agreement section titled "Binding effect."   It states:   "This
Repayment Agreement is not valid and binding until EMC has received
the signed Repayment Agreement and the initial down payment by the
date specified in this paragraph[, November 1, 2009]."[30]  Based on
that language, Defendants contend that the Repayment Agreement
never took effect because:  (1) Plaintiff's first payment was not
made until November 6, 2009,[31] and (2) the Repayment Agreement
requires payments of $3,293.00 to be valid and binding, but
Plaintiff's two payments were only $3,250.00 each.[32]   If the
Repayment Agreement is not effective, the disclaimer language
Plaintiff relies on cannot prevent abandonment of acceleration.[33]

     An offeree is required to "comply with all conditions placed
on the time and manner of acceptance" to accept an offer and create
a valid contract.  See Law v. Ocwen Loan Servicing, L.L.C., 587
F. App'x 790, 793-94 (5th Cir. 2014) (citing Padilla v. LaFrance,
907 S.W.2d 454, 460 (Tex. 1995) (finding that a loan modification
agreement was ineffective when acceptance was made conditional on
borrower faxing a signed copy of the agreement and making a down
payment by February 3, 2011, but borrower did not make the down

---

     [30]Repayment Agreement, Exhibit K to Defendants' Motion for
Summary Judgment, Docket Entry No. 14-12, pp. 6-7 ¶ 2.

     [31]See Defendants' Surreply, Docket Entry No. 23, p. 2 ¶ a.

     [32]See id. at 3-4 ¶ c.

     [33]See id.

payment until February 8, 2011, and did not fax the agreement until February 9). Plaintiff acknowledges that he did not make a payment until November 6, 2009,[34] but argues that this is irrelevant under the circumstances.[35] He argues that the Repayment Agreement states that it can "even become effective solely upon Justice's payment[.]"[36] This argument ignores that Plaintiff failed to pay the proper amount and paid late. Plaintiff also argues that the discrepancy in amount is irrelevant because of the Repayment Agreement's "clear disclaimer language."[37]

The court is not persuaded by these arguments and others regarding language in the Repayment Agreement. Because Plaintiff failed to comply with the conditions placed on the time and manner

---

[34]Plaintiff's Supplemental Declaration, Exhibit to Plaintiff's Summary Judgment Reply, Docket Entry No. 19-1, pp. 1-2 ¶ 3.

[35]See Plaintiff Brian W. Justice's Summary Judgment Sur-Sur-Reply ("Plaintiff's Sur-Sur-Reply"), Exhibit A to Plaintiff Brian W. Justice's Response to Defendants' Motion for Leave to File Sur-Reply and Request in the Alternative for Leave to File Responsive Sur-Sur-Reply ("Plaintiff's Request to File Sur-Sur-Reply"), Docket Entry No. 21-1, pp. 3-4 ¶ C.

[36]See Plaintiff's Summary Judgment Reply, Docket Entry No. 19, p. 3 ¶ 5(a). Plaintiff also argues that even if he were late with the first payment, that is irrelevant because the Repayment Agreement did not allow the borrower to claim that acceleration had been abandoned. See Plaintiff's Summary Judgment Reply, Docket Entry No. 19, pp. 5-6 ¶¶ d, e. Whether the borrower could claim abandonment under the terms of the Repayment Agreement or not, Plaintiff did not comply with its requirements.

[37]Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request to File Sur-Sur-Reply, Docket Entry No. 21-1, pp. 3-4.

of acceptance, the Repayment Agreement never became effective.[38]
See Law, 587 F. App'x at 793-94; see also Williams v. Bank of Am.,
N.A., 602 F. App'x 187, 188-89 (5th Cir. 2015) (finding that an
offer for a Modified Mortgage "was ineffectual and did not give
rise to a valid contract" when plaintiff did not sign and return
the offer until five days after the offer's deadline).  Because the
Repayment Agreement never took effect, the disclaimer language did
not impact the parties' relationship or the Loan's status.

Relying on Hardy v. Wells Fargo Bank, N.A., No. 01-12-00945-
CV, 2014 WL 7473762 (Tex. App.—Houston [1st Dist.] 2014, no pet.),
Plaintiff also argues that whether the Repayment Agreement took
effect is irrelevant.[39]  There, "the borrower failed to complete a
repayment plan, but nevertheless had payments made thereunder
accepted under various express disclaimers of abandonment in the
agreement.  The disclaimers were given effect by the court of
appeals since their meaning and effect was unrebutted by the
Lender."[40]  The court is not persuaded by this argument.  In Hardy
the repayment plan disclaimers applied because the repayment plan
was undisputedly effective.  Here, because the Repayment Agreement

---

[38]See Repayment Agreement, Exhibit K to Defendants' Motion for
Summary Judgment, Docket Entry No. 14-12, pp. 6-7 ¶ 2.  Plaintiff's
assertion that he and Defendants orally modified the Repayment
Agreement is addressed below.

[39]Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request
to File Sur-Sur-Reply, Docket Entry No. 21-1, pp. 2-3.

[40]Id. at 2, citing Hardy, 2014 WL 7473762, at *5.

was not effective, the disclaimers are not controlling.[41] Defendants successfully abandoned earlier Loan accelerations, as discussed below.[42]

(b)   The Statute of Frauds

Defendants argue that the statute of frauds also precludes enforcement of the Repayment Agreement. Defendants argue that the statute of frauds is a defense against the Repayment Agreement's enforceability because the Repayment Agreement does not contain Defendants' signature.[43] Defendants also argue that Plaintiff and Defendants could not orally modify the written Repayment Agreement through an alleged telephone conversation.[44] Plaintiff responds that the statute of frauds is irrelevant.[45]

A loan agreement involving an amount over $50,000 is not enforceable in Texas unless it is in writing and signed by the

---

[41]Plaintiff also cites a recent case from this court, Snowden v. Deutsche Bank Nat'l Trust Co., 2015 WL 5123436. He asserts that "in Snowden, the agreement apparently lacked any express disclaimers of abandonment . . . ." See Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request to File Sur-Sur-Reply, Docket Entry No. 21-1, pp. 2–3 ¶ A. Snowden does not address the issue of disclaimers.

[42]See Part II.B.2(a) infra for the discussion regarding abandonment.

[43]See Defendants' Response to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment ("Defendants' Response and Reply"), Docket Entry No. 18, p. 3.

[44]See Defendants' Surreply, Docket Entry No. 23, pp. 2–3.

[45]See Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request to File Sur-Sur-Reply, Docket Entry No. 21-1, p. 3.

party to be bound.  Tex. Bus. & Com. Code Ann. §26.02(b); see Whittier v. Ocwen Loan Servicing, L.L.C., 594 F. App'x 833, 837 (5th Cir. 2014).  Texas law defines "loan agreement" broadly.[46] Bank of Texas, N.A. v. Gaubert, 286 S.W.3d 546, 554 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.).  See, e.g., Langlois v. Wells Fargo Bank Nat'l Ass'n, 581 F. App'x 421, 425 (5th Cir. 2014) (forbearance agreement); Milton v. U.S. Bank Nat'l Ass'n, 508 F. App'x 326, 328-29 (5th Cir. 2013) (agreement to delay foreclosure); Gordon v. JPMorgan Chase Bank, N.A., 505 F. App'x 361, 364 (5th Cir. 2013) (original mortgage documents).

The statute of frauds also requires modifications of loan agreements to be in writing.  See Deuley v. Chase Home Fin. LLC, No. H-05-04253, 2006 WL 1155230, at *2 (S.D. Tex. April 26, 2006) (citing Garcia v. Karam, 276 S.W.2d 255, 257 (Tex. 1955)); SP Terrace, L.P. v. Meritage Homes of Texas, LLC, 334 S.W.3d 275, 282 (Tex. App.—Houston 2010 [1st Dist.], no pet.).  "An oral agreement to modify the percentage of interest to be paid, the amounts of installments, security rights, the terms of the remaining balance of the loan, the amount of monthly payments, the date of the first payment, and the amount to be paid monthly for taxes and insurance

---

[46] "Loan agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation . . . ." Tex. Bus. & Com. Code Ann. § 26.02(a)(2).

is an impermissible oral modification." <u>Montalvo v. Bank of America Corp.</u>, 864 F. Supp. 2d 567, 582 (W.D. Tex. 2012) (citing <u>Horner v. Bourland</u>, 724 F.2d 1142, 1148 (5th Cir. 1984)). The Repayment Agreement here is a modification of a "loan agreement" and subject to the Texas statute of frauds.[47]

The Repayment Agreement does not satisfy the statute of frauds because it does not contain Defendants' signature. Plaintiff points out that the Repayment Agreement does not have a place for Defendants' signature, and the cover letter states that "A copy of the agreement is enclosed **for your signature**" (emphasis Plaintiff's).[48] However, Texas law requires loan agreements to be signed by the party to be charged. <u>See Law</u>, 587 F. App'x 790, 793-94 (defendant noteholder never signed the proposed loan modification agreement, therefore, it was not a valid contract that the plaintiff could enforce against the defendant); <u>see also</u> <u>Snowden</u>, 2015 WL 5123436, at *3 (noting that a modification agreement was not properly initialed and indicating that it may not have been enforceable); <u>In re Rosas</u>, 520 B.R. 534, 540-41 (W.D. Tex. 2014) (same).

Plaintiff also alleges that he and Defendants orally modified the Repayment Agreement. Plaintiff states that he had a telephone

---

[47]Further, the Repayment Agreement itself concerns a total greater than $50,000, which places it in the statute of frauds. <u>See Deuley</u>, 2006 WL 1155230, at *2-3.

[48]Plaintiff's Summary Judgment Reply, Docket Entry No. 19, p. 3 ¶ 5; p. 5 ¶ b.

conversation with an EMC representative, who told him that his late payment would be accepted under the Repayment Agreement.[49] Thereafter, Defendants accepted two payments.[50]  Plaintiff argues that this establishes the Repayment Agreement was effective.[51] Because the Repayment Agreement is subject to the statute of frauds, those conversations could not modify the Repayment Agreement without a written, signed confirmation.  See Saucedo v. Rouhana, No. 4:14-cv-2401, 2015 WL 4638287, at *3 (S.D. Tex. Aug. 4, 2015); SP Terrace, 334 S.W.3d at 282–83.[52]

---

[49]See id. at 5 ¶ c.  See also Plaintiff's Supplemental Declaration, Exhibit to Plaintiff's Summary Judgment Reply, Docket Entry No. 19-1, pp. 1-2 ¶ 3 and Plaintiff's Request to File Sur-Sur-Reply, Docket Entry No. 21, p. 2.

[50]See Plaintiff's Summary Judgment Reply, Docket Entry No. 19, p. 5 ¶ c.

[51]Id. at 2 ¶ 3.  Plaintiff alleges that Defendants rely on a "cryptic loan servicing entry" to show his payments were late.  See id.  However, Plaintiff himself admits that the first payment he made was on November 6, 2009, five days after the initial down payment was due under the Repayment Agreement.  See Plaintiff's Supplemental Declaration, Exhibit to Plaintiff's Summary Judgment Reply, Docket Entry No. 19-1, pp. 1-2 ¶ 3.

[52]Since the conversations concern a loan amount over $50,000, even as a separate contract (rather than a modification) the parties would have to have memorialized the agreement in a signed writing.  See Deuley, 2006 WL 1155230, at *3.  "Moreover, even if the Deuleys claim the oral agreement constituted a completely new contract and not an oral modification, the statute of frauds still applies.  The Deuleys argue that their agreement with Chase was for an assistance program designed to delay repayment or otherwise financially accommodate them.  Under Texas law a loan agreement includes agreements to "delay repayment of money" or "to otherwise extend credit or make a financial accommodation.  Hence, the Court concludes the alleged oral agreement, even standing alone, is subject to the statute of frauds and therefore unenforceable."  Id. (internal citations omitted).

-16-

Plaintiff argues that since he is not claiming breach of contract "in an attempt to enforce the repayment plan," Defendants' statute of frauds argument is irrelevant.[53]  Plaintiff argues that Defendants failed to prove "that Justice was 'late' based solely on a loan servicing notation of the date paid."[54]  However, Plaintiff paid too late and too little for the Repayment Agreement to take effect, Defendants did not sign the Repayment Agreement, and the alleged oral modifications are unenforceable.  Although Plaintiff has not asserted a breach of contract claim, his statute of limitations argument nevertheless relies on the terms of an ineffective agreement.[55]

2. <u>Defendants abandoned the Accelerations, and the statute of limitations for foreclosure has not expired.</u>

The primary issue in this case is whether Defendants abandoned the 2009 and "purported" 2010 Accelerations.  Because the summary

---

[53]Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request to File Sur-Sur-Reply, Docket Entry No. 21-1, p. 3.

[54]See id.; Plaintiff's Summary Judgment Reply, Docket Entry No. 19, p. 2 ¶ 3.

[55]Finally, Plaintiff argues that the statute of frauds is irrelevant.  "[T]he repayment plan states that even timely payments would not have mattered; the Lender could have foreclosed at any time before completion of the last act under the repayment plan since the repayment plan disclaimed abandonment under all circumstances."  Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request to File Sur-Sur-Reply,  Docket Entry No. 21-1, p. 2 ¶ B.  This argument is moot.  Whether Defendants retained the right to foreclose or not under the terms of the Repayment Agreement does not impact abandonment since the Repayment Agreement was never effective.

judgment evidence establishes that Defendants abandoned them, the statute of limitations for foreclosure had not expired when Defendants filed the 2014 Rule 736 Application.

(a)   Abandonment

When a deed of trust containing a power of sale creates a lien on real property, Texas law requires that the lender foreclose no later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.035; Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 567. "If a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated." Khan v. GBAK Properties, Inc., 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Where acceleration is optional at the election of the note holder, the borrower's default does not automatically trigger the limitations period. Holy Cross, 44 S.W.3d at 566. The foreclosure cause of action only accrues when the holder actually exercises its acceleration option. Id. Effective acceleration requires: (1) notice of intent to accelerate; and (2) notice of acceleration. Id.

The parties can abandon acceleration by agreement or conduct. See Clawson v. GMAC Mortg., LLC, No. 3:12-cv-00212, 2013 WL 1948128, at *3 (S.D. Tex. May 9, 2013); Khan, 371 S.W.3d at 356. For instance, "[e]ven when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder

-18-

continues to accept payments without exacting any remedies available to it upon declared maturity." Holy Cross, 44 S.W.3d at 566. A lender can unilaterally abandon an acceleration. See Leonard v. Ocwen Loan Servicing, L.L.C., 14-cv-20611, 2015 WL 3561333, at *3 (5th Cir. June 9, 2015). Statements by either party about the loan's acceleration status can constitute abandonment. In re Rosas, 520 B.R. at 539 (citing Khan, 371 S.W.3d at 355); see also Murphy, 2015 WL 1392789, at *11.

### i.    The 2009 Acceleration

Plaintiff argues that more than four years passed between the March 12, 2009, Acceleration and the March 19, 2013, notice of default, which was "the lender's first signal that it would accept less than the full payoff."[56] Defendants respond that the payments Plaintiff made post-Acceleration in 2009 show that the 2009 Acceleration was abandoned.[57]

Under Texas law by accepting payments of less than the fully accelerated amount of the loan, Defendants abandoned the 2009 Acceleration. See Rivera v. Bank of Am., N.A., 607 F. App'x 358,

---

[56]Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, p. 6 ¶ 10; p. 9 ¶ 16.

[57]Defendants' Motion for Summary Judgment, Docket Entry No. 14, pp. 6-7; 9; 12-14; 2010 Notice of Acceleration, Exhibit D to Defendants' Motion for Summary Judgment, Docket Entry No. 14-4. As discussed above, the Repayment Agreement was never effective, so the disclaimers therein cannot preclude abandonment. See Part II.B.1.

360-61 (5th Cir. 2015); <u>Leonard</u>, 2015 WL 3561333, at *1-3; <u>Holy</u> <u>Cross</u>, 44 S.W.3d at 566.   The Repayment Agreement and other loan communications are further evidence of abandonment, even if ineffective or unaccepted.   See <u>Snowden</u>, 2015 WL 5123436, at *3.[58]

## ii.  The 2010 Acceleration

Defendants submitted an August 26, 2010, Notice of Acceleration with an authenticating affidavit as summary judgment evidence.[59]   The affidavit was executed by a custodian of records for the law firm that represented Defendants and sent the 2010 Notice of Acceleration.[60]   Plaintiff contends that the 2010 Notice of Acceleration is unreliable because the affiant lacks personal knowledge (she did not write the 2010 Acceleration letter), five

---

[58]Plaintiff notes that Rule 736 Applications are "mere proceedings of convenience" and not lawsuits.  Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, pp. 7-8.  Thus, they "neither impair a lender's right to continue with foreclosure based on a given acceleration, nor otherwise constitute an abandonment of acceleration."  <u>Id.</u> citing <u>Deutsche Bank Nat. Trust Co. v.</u> <u>Ketmayura</u>, No. A-14-CV-000931-LY-ML, 2015 WL 3899050, at *7 (W.D. Tex. June 11, 2015); <u>Murphy</u>, 2015 WL 1392789, at *9-11. Defendants' abandonment arguments do not depend on the Rule 736 Applications, however.  Defendants could have filed a judicial foreclosure lawsuit or counterclaimed, but were not required to.

[59]<u>See</u> 2010 Notice of Acceleration, Exhibit D to Defendants' Motion for Summary Judgment, Docket Entry No. 14-4; Affidavit of Dominique Varner ("Varner Affidavit"), Exhibit D.1 to Defendants' Motion for Summary Judgment, Docket Entry No. 14-5.

[60]<u>See</u> Varner Affidavit, Exhibit D.1 to Defendants' Motion for Summary Judgment, Docket Entry No. 14-5, p. 1; 2010 Notice of Acceleration, Exhibit D to Defendants' Motion for Summary Judgment, Docket Entry No. 14-4, p. 3 ¶ 1.

years have elapsed since the document was allegedly served on Plaintiff, and "[d]efendants have submitted no tracking proof."[61] Defendants respond that these challenges go to the weight and not the admissibility of the Notice.[62]

A corporate representative is qualified to attest to a corporate act, "such as mailing notice by certified mail." Rodriguez v. U.S. Bank, N.A., No. SA-12-CV-345-XR, 2013 WL 5173125, at *2 (W.D. Tex. Sept. 12, 2013) (citing Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 256 (5th Cir. 2013)). Moreover, Texas law does not require proof that the notice was received, and "'the affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.'" Id.; see also Tex. Prop. Code Ann. § 51.002(e). The Varner Affidavit is by an employee with personal knowledge of the business records kept in the usual course of business, and it states that the Notice was served by first-class and certified mail

---

[61]See Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, pp. 1-2. Plaintiff's Summary Judgment Reply, Docket Entry No. 19, p. 4 ¶ 6.

[62]See Defendants' Response and Reply, Docket Entry No. 18, p. 5; Defendants' Motion for Summary Judgment, Docket Entry No. 14, p. 10. Plaintiff also challenges Defendants' summary judgment proof by asserting the 2010 Acceleration is irrelevant because of a $145,000 increase in the amount owed from the 2009 Acceleration. See Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, p. 2. Plaintiff does not explain further how the difference in payoff amount from an earlier notice negates the relevance of the document.

on or around August 26, 2010.[63]   It is therefore competent summary
judgment evidence.

The 2010 Acceleration was abandoned by subsequent actions of
the parties.   A lender can abandon acceleration by requesting
payment on less than the full amount of the loan, such as by
sending account statements indicating the past-due balance and
giving the borrower an option to cure his default.   See Leonard,
2015 WL 3561333, at *3-4; see also Boren v. U.S. Nat'l Bank Ass'n,
No. H-13-2160, 2014 WL 6892553, at *3 (a note-holder can abandon
acceleration by its actions, including mailing notice-of-intent-to-
accelerate letters).   Defendants sent Plaintiff a notice of default
and intent to accelerate in March of 2013.[64]   The notice demands
that Plaintiff cure his default.[65]   It does not require Plaintiff
to pay the entire accelerated balance of the Loan.[66]   Defendants
sent another notice of default on October 1, 2013.[67]   The two 2013

---

[63]See Varner Affidavit, Exhibit D.1 to Defendants' Motion for
Summary Judgment, Docket Entry No. 14-5.   Plaintiff also challenges
the apparent lack of a predicate default notice for the 2010
Acceleration as evidence of Defendants' mishandling of the loan and
"why the Lender allowed more than four years to pass between the
March 12, 2009 acceleration and the March 19, 2013 notice of intent
to accelerate."   However, the 2009 Acceleration was abandoned, and
even a faulty notice of acceleration would not revive it.

[64]See Acceleration Warning (Notice of Intent to Foreclose),
Exhibit F to Defendants' Motion for Summary Judgment, Docket Entry
No. 14-7, p. 2.

[65]See id.

[66]See id.

[67]Demand Letter—Notice of Default, Exhibit G to Defendants'
Motion for Summary Judgment, Docket Entry No. 14-8, p. 4.

default notices put Plaintiff on notice that Defendants were abandoning the 2010 Acceleration.[68]

        (b)   Plaintiff's Other Statute of Limitations Arguments

        Plaintiff advances several other arguments in support of its motion. First, Plaintiff asserts that a loan cannot be accelerated twice, arguing the 2010 Notice of Acceleration had "no legal effect because the loan had already been accelerated."[69]  As Plaintiff states, the law requires a predicate notice of default "that affords the borrower an opportunity to cure the default."[70]  See Holy Cross, 44 S.W.3d at 566.  Whether the 2010 Notice of Acceleration was proper or not, Defendants sent two default notices in 2013, which is sufficient to abandon acceleration.  See Boren, 2014 WL 6892553, at *3.  Abandonment reinstates the loan, which can then be accelerated upon borrower default.  See Holy Cross, 44 S.W.3d at 567.

_____

        [68]Plaintiff also points out that Defendants sent Plaintiff "solicitations for modifications" in this time period, and "[m]erely sending a loan modification offer does not constitute abandonment."  Plaintiff points to a 2012 Request for Mortgage Assistance and a responsive letter from Defendants.  As evidence that Plaintiff "never accepted these proposals or made payments under them," Plaintiff attaches an earlier letter from EMC to Plaintiff dated January 8, 2010 ("EMC has not received the trial payment due the first of this month.").  Whether Plaintiff accepted these proposals or made payments under them, this communication does not determine the abandonment issues.  As discussed above, Defendants abandoned the Accelerations.

        [69]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, pp. 5-6.

        [70]See id. at 5.

Plaintiff also argues that Defendants imply a "false" connection between the 2010 Acceleration and the 2010 Rule 736 Application because these documents recite different payoffs.[71] Thus, the 2010 Rule 736 Application must be based on the 2009 Acceleration.[72] Plaintiff asserts that this shows that the Defendants did not abandon the 2009 Acceleration.[73] Defendants respond that there is "no evidence" that the 2010 Rule 736 Application was based on the 2009 Acceleration.[74] Defendants distinguish "payoff amount" and "principal balance."[75] Plaintiff responds that the 2010 Rule 736 Application does not recite or prove up any payoff, which is required.[76] Thus, Plaintiff argues that Defendants have not shown a connection between the 2010 Rule 736 Application and the purported 2010 Acceleration.[77] Plaintiff has not established a connection with the 2009 Acceleration, and neither party has proved for summary judgment purposes which acceleration the 2010 Rule 736 Application was premised on. Moreover, even if the 2010 Rule 736 Application was

---

[71]See Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, p. 3.

[72]See id.

[73]See id.

[74]See Defendants' Response and Reply, Docket Entry No. 18, p. 4.

[75]Id.   "The principal amount accrues interest and is amortized over the life of the loan.  However, the loan can still accrue other charges while in default . . . ."

[76]See Plaintiff's Summary Judgment Reply, Docket Entry No. 19, p. 4 ¶ 6.

[77]See id.

based on the 2009 Acceleration, Plaintiff offers no explanation how a Rule 736 Application could revive the previously abandoned 2009 Acceleration.[78]

Plaintiff argues that the 2011 Lawsuit did not toll limitations for foreclosure because Defendants could have counterclaimed for judicial foreclosure in Plaintiff's 2011 Lawsuit or filed a separate lawsuit.[79] Because Defendants abandoned the 2009 and 2010 Accelerations before the statute of limitations expired, this argument is not relevant.

Finally, Plaintiff argues that disclaimer language in the security instrument precludes Defendants' abandonment of the 2009 Acceleration.[80] Defendants respond that the security instrument language does not prevent later abandonment of acceleration, citing

---

[78]See Part II.B.2.(a), Abandonment. Further, there is evidence in the summary judgment record that Defendants voluntarily non-suited the 2010 Rule 736 Application in 2012. There is a "difference between intentional litigation conduct that evidences a lender's intent to abandon acceleration of the debt, and mere litigation procedure that does not commit the lender to abandonment of acceleration." Ketmayura, 2015 WL 3899050, at *6 (noting the difference between dismissal of a Rule 736 Application triggered by the filing of an independent lawsuit and voluntary action by a lender to dismiss the Rule 736 Application). While the 2010 Rule 736 Application was dismissed by the Plaintiff's 2011 Lawsuit, the 2012 Order of Nonsuit is evidence of voluntary litigation conduct indicating abandonment. A lender can abandon foreclosure even after obtaining an order allowing for foreclosure. See Snowden, 2015 WL 5123436, at *3. See also Biedryck v. U.S. Bank Nat'l Ass'n, No. 01-14-00017-CH, 2015 WL 2228447, at *5 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.)).

[79]See id. at 9-10; see Objections and Responses to Interrogatories, Exhibit 20 to Plaintiff's Motion for Summary Judgment, p. 31, Interrogatory 4.

[80]See Plaintiff's Summary Judgment Reply, Docket Entry No. 19, pp. 2; 4-6.

<u>Mendoza v. Wells Fargo Bank, N.A.</u>, 2015 WL 338909 (S.D. Tex. Jan. 23, 2015).[81]  Plaintiff replies that he is not arguing that Defendants could not have abandoned the accelerations, but that "the security instrument wording operates as a disclaimer of actual abandonment in the absence of any other clear or unrebutted evidence of abandonment."[82]  Plaintiff has provided no authority "construing an anti-waiver provision in a deed of trust as barring abandonment of acceleration."  <u>Mendoza</u>, 2015 WL 338909, at *4 ("[a]bandonment of a prior acceleration and waiver of future acceleration are separate issues . . . .").

### III.  <u>Conclusions and Order</u>

Plaintiff's Request in the Alternative for Leave to File Responsive Sur-Sur-Reply (Docket Entry No. 21) is **GRANTED**.

Because the undisputed facts establish that Defendants abandoned the 2009 and 2010 Accelerations, Defendants are not barred by limitations from foreclosing on Plaintiff's property. Plaintiff's Motion for Summary Judgment is therefore **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**.

**SIGNED** at Houston, Texas, on this 8th day of October, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[81]<u>See</u> Defendants' Surreply, Docket Entry No. 23, p. 4 ¶ D.

[82]<u>See</u> Plaintiff's Sur-Sur-Reply, Exhibit A to Plaintiff's Request to File Sur-Sur-Reply, Docket Entry No 21-1, pp. 4-5.